15877

EVERLY v. BAUMIL

(39 S. E. (2d), 905)

*Mr. C. R. Burbage,* of Charleston, for Appellant,

*Messrs. Huger Sinkler* and *Charles H. Gibbs,* of Charleston, for Respondent,

October 21, 1946.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous opinion of the Court.

This action was brought to annul the marriage between plaintiff and defendant. It comes before us on an appeal by defendant from an order of the Court below overruling a demurrer to the complaint. The following facts, which must be accepted as true in passing on the demurrer, are alleged in the complaint:

Defendant was formerly married to one Joe Baumil. She procured a divorce from him in the State of Florida, falsely representing in that proceeding that she was a resident of that State, when in fact she was a·resident of Charleston, South Carolina and had been in Florida less than a week before the commencement of the divorce action there. Thereafter she represented to the plaintiff that she had obtained

a valid divorce from Baumil and plaintiff and defendant were married at Savannah, Georgia, on December 19, 1942. After living together as man and wife for a period of six or seven months, defendant left plaintiff and they have not lived together since. Subsequent to this separation, plaintiff learned for the first time that the defendant's divorce from her first husband was obtained by fraudulent representations as to her domicil and thereafter commenced this action in September, 1945. It is alleged in the complaint that the defendant is now, and was at the times mentioned, a resident of South Carolina and was never a resident of Florida. There is no allegation, however, as to the residence of either the plaintiff or Baumil. The annulment of the marriage between plaintiff and defendant is sought on the ground that defendant is still the lawful wife of Baumil, as her marriage to him according to the allegations of the complaint, has not been dissolved either by his death or by a valid decree of divorce.

By appropriate exceptions, defendant contends that the courts of this State are without jurisdiction to annul the marriage in question because (1) it was celebrated in the State of Georgia, and (2) the jurisdiction of the Florida Court to grant the divorce of defendant from her first husband cannot be collaterally attacked in this proceeding.

It is conceded that the Court below had jurisdiction of the parties to the action. Does the Court of Common Pleas of Charleston County, where the defendant now resides and has her domicil, have jurisdiction in the sense of having the power to annul a marriage which was not celebrated in this State, but in the State of Georgia? Or do the Courts of Georgia, as contended by defendant, have exclusive jurisdiction of such an action? The overwhelming weight of authority, both in this country and in England, is to the effect that the courts of the domicil of the parties have jurisdiction to annul a marriage celebrated elsewhere. *Cunningham v. Cunningham,* 206 N. Y., 341, 99 N. E., 845; *Christlieb v. Christlieb,* 71 Ind. App., 682, 125 N. E., 486;

*Gwin v. Gwin,* 219 Ala., 552, 122 Sou., 648; *Hanson v. Hanson,* 287 Mass., 154, 191 N. E., 673, 93 A. L. R., 701; *Levy v. Levy,* .... Mass., ...., 34 N. E. (2d), 650; *Davis v. Davis,* 119 Conn., 194, 175 A., 574; *Cross v. Cross,* ...., Mont., ...., 102 P. (2d), 829; *Hitchens v. Hitchens,* 47 Fed. Sup., 73; Restatement of the Law of Conflict of Laws, American Law Institute, Section 115. It is further generally held that the domicil of one of the parties within a state is sufficient to confer jurisdiction upon its courts to grant a decree of annulment where, as in the instant case, the court has jurisdiction of both parties by voluntary appearance or personal service within the state. Solely as a matter of interest, as the question is not before us, we mention the case of *Pepper v. Shearer,* 48 S. C., 492, 26 S. E., 797, where in an action for annulment brought by a resident of this State against a non-resident upon whom there was attempted personal service outside of this State, it was held that such service was insufficient to give the courts of this State jurisdiction of the person of the defendant.

The view that jurisdiction in an action for the annulment of a marriage rests exclusively in the state or country where the marriage is celebrated has received scant support from the courts. See annotation in 128 A. L. R., 61. It has been championed, however, in some academic circles. See Goodrich, Jurisdiction to Annul a Marriage, 32 Harvard L. Review, 806. The soundness of the theory advanced by the author of the article mentioned is vigorously attacked in an article found in 18 Cal. L. Review, page 105.

We do not think there is any reasonable justification for denying to the courts of the forum where the parties are domiciled the power to annul a marriage solemnized in another state. It is fundamental that each state has the right to determine the marital status of its citizens under its laws. As stated by Mr. Justice Douglas in *Williams v. State of North Carolina,* 317 U. S., 287, 63 S. Ct., 207, 143 A. L. R., 1273, "Domicil creates a relationship to the state which

is adequate for numerous exercises of state power * * * Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders".

We need not pause to discuss or determine whether in annulment actions jurisdiction of the domicil and of the *locus celebrationis* should be concurrent and not confined to the domicil. We wish to further point out that we are now dealing solely with the question of jurisdiction and not the question of the applicable law to be applied in exercising jurisdiction. It will be noted, however, that the ground upon which annulment is sought in this case is also a proper ground for declaring a marriage null and void in an equity proceeding in Georgia. *Gearllach v. Odom,* .... Ga., ...., 37 S. E. (2d), 184.

Defendant further contends that the power of the courts of this State to declare a marriage void is derived solely from our statutes and that these statutes only apply to the annulment of marriages solemnized in South Carolina. The applicable statutory and constitutional provisions were ably reviewed by Mr. Justice Woods in *Davis v. Whitlock,* 90 S. C., 233, 73 S. E., 171, Ann. Cas. 1913-D, 538. The Court there held that the Court of Common Pleas was not only expressly authorized by statute to annul a marriage but that apart from the statutory provisions, the power to do so "may be asserted with confidence" under the jurisdiction conferred on that Court by our Constitution. The pertinent statutory provisions are also discussed in the recent case of *Hughey v. Ray,* 207 S. C., 374, 36 S. E. (2d), 33. We find nothing in our Constitution or these statutes which discloses a legislative intent that the power given to the Court of Common Pleas to annul a marriage should be applicable only to marriages contracted in this State. Other courts have likewise construed similar statutes. *Barney v. Cunyes,* 68 Vt., 51, 33 A., 897; *Scularekes v. Gullett,* .... N. J., ...., 150 A., 826.

The remaining question for determination is the contention that the courts of this State are without power to inquire into the jurisdiction of the Florida Court to grant the divorce obtained by defendant. It is now well settled that the jurisdiction to grant a divorce rests on domicil. Accordingly, if neither of the parties to the Florida divorce was domiciled in that State, the courts there were without jurisdiction to entertain the proceeding. The question under discussion must be determined adversely to defendant under the recent decision of *Williams v. State of North Carolina,* 325 U. S., 226, 68 S. Ct., 1092 (second appeal). The Court there said: " 'It is too late now to deny the right collaterally to impeach a decree of divorce made in another state, by proof that the court had no jurisdiction, even when the record purports to show jurisdiction * * *' It was 'too late' more than forty years ago. *German Savings & Loan Society v. Dormitzer,* 192 U. S., 125, 128, 24 S. Ct., 221, 222, 48 L. Ed., 373". Also, see our own case of *State v. Westmoreland,* 76 S. C., 145, 56 S. E., 673.

The order appealed from is affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.